23 C.C.P.A. (Patents)

## In re HARRISON.

Patent Appeal No. 3617.

Court of Customs and Patent Appeals.
April 6, 1936.

Fay, Oberlin & Fay, of Washington, D. C. (Almon S. Nelson, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed his application in the United States Patent Office for a patent on a claimed new and useful process and apparatus for converting hydrocarbons. Claims 1 to 7, inclusive, and 13 and 14 of the application were refused by the Examiner, while claim 8 was allowed. Said claims were refused on reference to the following patents: British Patent No. 232,283, April 14, 1925; Lang, 954,575, April 12, 1910; Greenstreet, 1,740,691, December 24, 1929; Herthel et al., 1,747,437, February 18, 1930; Pratt, 1,752,264, March 25, 1930; Fixman, 1,781,872, November 18, 1930.

On appeal to the Board of Appeals, the decision of the Examiner was affirmed, largely by reference to the British patent to Golby, the Board saying: "The examiner has rejected the claims in view of several patents, the best example of which appears to be the British Patent No. 232,283."

Rejected claims 1 to 7, inclusive, are for a process, while 13 and 14 are for an apparatus. Claims 1, 2, and 13 are typical, and are as follows:

"1. A process of altering the boiling point of hydrocarbons, which comprises heating a petroleum distillate under pressure, then digesting in a zone guarded against substantial heat-loss and being without temperature-rise from external heat and providing liquid-phase cracking conditions releasing the material into a zone of lower pressure, heating another pe-

422

troleum distillate at a higher temperature but lower pressure providing substantially vapor-phase cracking conditions, and independently discharging into admixture in the same lower pressure zone aforesaid.

"2. A process of altering the boiling point of hydro-carbons, which comprises heating a petroleum fraction at not exceeding 975° F., then digesting in a zone guarded against substantial heat-loss and being without temperature-rise from external heat and under a pressure of 400–1200 pounds per square inch, releasing the material into a zone of lower pressure not exceeding 200 pounds, heating another petroleum distillate at a temperature of 1025–1125° F. at pressure not exceeding 200 pounds per square inch, and independently discharging into admixture in the same lower pressure zone aforesaid.

"13. Apparatus for altering the boiling point of hydrocarbons, which comprises a liquid-phase heating coil, means for maintaining high pressure in said coil, an enlarged chamber fed by said coil, means for guarding said chamber against substantial heat loss, a vapor-phase heating coil, means for maintaining a lower pressure on said last named coil than on said first-mentioned coil, means in common for simultaneously heating said liquid-phase coil and said vapor-phase coil with a minimum differential of higher temperature on the vapor-phase coil, and a drum in common to which said enlarged chamber and said second coil both discharge."

Appellant's process and apparatus is described by the Examiner as follows:

"This is a process, and means for cracking hydrocarbon oil which comprises heating a hydrocarbon distillate, for example, gas oil, in heat exchangers, then heating the distillate in pipe still 2 and 4 to 925 to 975° F. under 400 to 1200 lbs. per sq. inch, then passing to the time reaction digester drum 6, and thence to vaporizer drum 8 where the pressure is reduced to 100 to 200 lbs./in².

"Another distillate, defined as a lighter distillate in claim 5, is supplied to coil 30 through preheater coil 28 and thence to vaporizer drum 8. Temperatures of 1000 to 1125° F. and pressures not exceeding 200 lbs. per square inch are maintained in coil 30 and any desired petroleum distillate may be employed. Vapors are removed, and fractionated in towers 10 and 23 and auxiliary towers 19, 20 and 21 and final condensate collected in 41. Valve 35 may be opened to feed the so called vapor phase pipe still 28 and 30 by pump 51, thus providing the lighter of the two distillates in 10 and 23 to coil 30."

In addition to what has been said by the Examiner, the appellant's specification provides, in part:

"* * * The conditions in the heating coil portion of the system and the digester drum 6 are such as to maintain liquid-phase cracking, the pressure on the drum as determined by valve 9 being on the order of 400–1200 pounds per square inch, for instance, and the temperature in the neighborhood of, but not exceeding 975° F. * * *"

And again the specification states:

"* * * The material then proceeds through preheating coil 28, main heater sections 30, 31, and thence through connection 32 to drum 8 to mingle in heated state with the material entering at the same time from the liquid-phase portion of the system. Conditions in the portion 30, 31 of the system are maintained for vapor-phase cracking, the temperature being above 1000° F., and the pressure not exceeding 200 pounds per square inch. Preferably, a temperature of 1025–1125° F. is maintained for the maximum as leaving coil 31."

An examination of the specification and drawing of the appellant's application plainly discloses that the process involves the mingling of a distillate in a liquid phase under high pressure and with a comparatively low temperature, and another distillate under a lower pressure and with a higher temperature in a vapor phase, in a chamber of comparatively low pressure.

The British patent, which is mainly relied upon by the Board of Appeals, and which is the only one of the references referred to by the Board, as it seems to us, differs from the process of appellant in one very essential feature, namely, that the British patentee does not have in mind the commingling of hydrocarbon materials, one in a liquid phase and the other in a vapor phase, but rather describes a process and apparatus in which two hydrocarbons, both in a liquid stage, are brought into a commingled state in a common reservoir or chamber, after which fractionating occurs in the process.

The Board of Appeals, as we understand it, is of the opinion that a vaporizing of one of the hydrocarbons occurs before the commingling of the two streams in the

furnace tubes 9 of the British patent, but the Board does not take the position that there is any production of a vapor phase at any earlier step in the process.

A careful study of the British patent, it seems to us, quite clearly demonstrates that it was not intended by this patent to claim or show any commingling of liquid phase and vapor phase streams of hydrocarbons. For instance, the specification of the British patent, while it shows the mingling of two hydrocarbons in the process, seems to indicate that they are mingled as liquids. It is said:

"* * * The reaction chamber and furnace tubes are maintained at pressures controlled to cause the conversion of the oil undergoing treatment to take place while the oil is in substantially the liquid phase. * * *

"The aim of the present invention is primarily then, to supply a process in which an oil of high viscosity is heated to a temperature to distill off a major portion. This oil while in the heated condition is blended with oil of different molecular weight either of the same character or of a different character, which has previously undergone cracking and is existing in the form of synthetic crude. This blending or combining of the two oils while in a heated condition accompanied by a reduction of pressure upon the synthetic crude produces an increased amount of overhead products from the synthetic crude, and also an increased distillation of the high viscosity oil as the vaporization of the synthetic crude has the action of steam promoting distillation in the oil with which it is blended. Further, from the distillation of these blended products there is produced a more fluid bottom which contains no considerable amount of free carbon, thus giving a more marketable product. * * *

"* * * The heated oils are combined in a common vaporizer with cracked products, introduced thereto from cracking process. * * *

"The process permits blending of high specific gravity and low viscosity oils such as would remain from the distillation of the synthetic crude with high viscosity and comparatively low specific gravity fuel oil such as remains from natural crude or natural fuel oil produced from the low pressure treatment in the tube still. * * *

"At this juncture the synthetic crude is combined with the oil from the furnace tubes (9) in the common line (13) where the two are completely blended. Since the synthetic crude carries a considerable amount of gas, in addition to the vapors involved, it acts similarly to the injection of steam, producing a vaporization of considerably more of the oil coming from the furnace tubes' than would otherwise be the case. At the same time, the oil coming from the furnace tubes (9) has a higher temperature since it has not been subjected to considerable cracking and is not cooled by its release through valve (12) as the pressure drop is relatively slight. The result is that it has a considerably higher temperature and raises the temperature of the synthetic crude causing more of it to vaporize. Such being the case approximately 70% of the oil coming from the reaction chamber (43) is vaporized even when fuel oil is used as a charge stock to the cracking stage; whereas if the two oils were not blended in the manner explained probably not more than 50% of the oil would be vaporized. * * *

"Further characteristics which have been noted in the blending of oil and distillates while in a heated condition are that they are more susceptible to treatment. * * *"

In further illustration of the process of the British patent, claim 1 of the patent is as follows:

"1. A process of treating hydrocarbons, including the steps of charging oils to separate stages of treatment, subjecting the oil in one stage to a temperature sufficient to distill off a portion thereof, subjecting the oil in the other stage to conditions of temperature and pressure, effecting a cracking thereof without substantial vaporization, blending the oil from the separate stages and distilling off the volatile portions of the combined oils."

It is impossible to read these portions of the specification and claims of the British patent without arriving at the conclusion that the process, while the respective temperatures and pressures may approximate those in appellant's application, is not the same as the process disclosed by appellant in respect to the feature already alluded to, namely, that it does not disclose the mingling of a hydrocarbon stream in a liquid phase with another hydrocarbon stream in a vapor phase.

We are not prepared to say that the same result might not be ultimately produced. However, it is evident that the appellant has disclosed a process which dif-

fers from that of the British reference in the particular to which we have just called attention.

In appellant's claims numbered 1, 4, 5, 6, and 7, the: feature of the employment of liquid phase cracking conditions and vapor phase cracking conditions is specifically described and claimed. Claims 2 and 3 do not contain this feature.

We have examined the other references cited by the Examiner, but do not find in any of them the features which we have just mentioned. Unfortunately as to the other reference patents, we do not have the views of the Board of Appeals thereon, but it will be assumed that the British patent to Golby is the most pertinent reference on this point.

We are, therefore, of opinion that claims 1, 4, 5, 6, and 7 present patentable subject-matter and should have been allowed. The same reason does not extend to claims 2 and 3, and their rejection is affirmed.

Claims 13 and 14 for apparatus, as it seems to us, are fairly met by the British .patent and other references in the record. It fully appears, we believe, that the apparatus shown by the British patent could be operated in the manner described by said claims 13 and 14. For instance, in appellant's claims it is stated that one heating coil is a "liquid-phase heating coil," while the other is a "vapor-phase heating coil." It does. not appear that there is any dis-.tinctive feature of the coil in appellant's application which is not found in the disclosure of the British patent, and it may well be that the British patent might be operated with its coils and furnaces so that one coil would create a vapor phase and the other a liquid phase. The same· may be said as to the apparatus disclosed by other references found in the record.

The essential features of appellant's disclosure lie in his process rather than in his apparatus.

The Board of Appeals made no specific reference to apparatus claims 13 and 14. However, on the authority of In re Wagenhorst, 64 F.(2d) 780, 20 C.C.P.A. (Patents) 991, it is held that the Board approved of the rejection of said claims by the Examiner upon the British patent to Golby.

The decision of the Board of Appeals is reversed as to claims 1, 4, 5, 6, and 7, and is affirmed as to claims 2, 3, 13, and 14.